UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MYKAI DAVIS, :
               Petitioner, :
                                : **OPINION AND ORDER**
v. :
                                : 18 CV 1308 (VB)
UNITED STATES OF AMERICA, : S2 14 CR 768-05 (VB)
              Respondent. :
----------------------------------------------------------x

Briccetti, J.:

       Petitioner Mykai Davis, proceeding pro se, moves under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. Liberally construed, his claims can be fairly summarized as follows:

       1.     His attorney gave him constitutionally ineffective advice at the time of his guilty plea regarding the merits of his suppression motion as well as his likely sentencing exposure and the scope of the conduct for which he would be held responsible;

       2.     His guilty plea was not knowing and voluntary because (i) he decided to plead guilty on the morning of his scheduled suppression hearing and did not realize he was giving up his right to challenge the admissibility of evidence he claims was obtained unlawfully, and (ii) he was under the influence of medication;

       3.     He was improperly sentenced based on (i) his alleged involvement in a shooting on March 31, 2013, for which there was no factual basis, and (ii) a reference in his plea agreement to having been convicted of grand larceny on September 4, 2013, when in fact his conviction was for petit larceny; and

1

4. His conviction under 18 U.S.C. § 924(c)(1)(A)(i) for using and carrying a firearm in connection with a crime of violence should be vacated in light of the Supreme Court's recent decision in United States v. Davis, 139 S. Ct. 2319 (2019).

For the following reasons, to the extent the motion is based on a claim of ineffective assistance of counsel or alleged defects in Davis's guilty plea and sentencing proceedings, the motion is DENIED. Therefore, his conviction for conspiring to participate in the affairs of a racketeering enterprise must stand. However, as the government acknowledges, Davis's firearms conviction under Section 924(c) must be vacated in light of United States v. Davis. That being the case, although there is no basis to vacate Davis's racketeering conspiracy conviction, his sentence must be vacated and he will be resentenced on the racketeering conspiracy count.

## BACKGROUND

Davis's motion and his numerous later-filed letters, motions, and other submissions; the government's memorandum of law in opposition and attached exhibits, and its various supplemental memoranda; and the record of the underlying criminal proceedings, reflect the following:

On February 19, 2015, Davis was arrested pursuant to a warrant based on an indictment that charged him and several co-defendants with, among other things, conspiring to commit Hobbs Act robberies, and using, carrying, and brandishing firearms during and in relation to the Hobbs Act robbery conspiracy. On July 1, 2015, the instant superseding indictment (the "S2 indictment") was filed, charging Davis and others with participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One), using and possessing firearms some of which were discharged, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) (Count Two), and other offenses,

including a Hobbs Act robbery conspiracy and a corresponding firearms offense under Section 924(c).

The S2 indictment charged that Davis was a member of a Yonkers street gang called "Cruddy 650." As set forth in the Presentence Report ("PSR") prepared prior to Davis's sentencing, Davis was one of the founders of the gang and played a leadership role in many of the gang's activities (PSR ¶¶ 30, 33); he had access to guns and lent them to fellow gang members to carry out criminal activities, including armed robberies (PSR ¶ 33); he recruited others to participate in numerous robberies that he planned and orchestrated (PSR ¶¶ 35-46); and he helped plan the shooting of a rival gang member on March 31, 2013 (PSR ¶ 34).

Following his indictment, Davis moved to suppress the contents of a cellphone seized from him on November 3, 2014. On the morning of the scheduled suppression hearing, Davis, rather than proceed with the hearing, pleaded guilty to Count One of the S2 indictment (the racketeering conspiracy count), and a lesser-included offense in Count Two, specifically, using and carrying a firearm during and in relation to a crime of violence, namely the racketeering conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The firearms count carried a mandatory minimum sentence of 60 months' imprisonment, which was required to run consecutively to any other sentence imposed.

The plea was entered pursuant to a written plea agreement, signed by Davis, that included a Sentencing Guidelines stipulation. Among other things, Davis agreed to a sentencing range of 151 to 188 months' imprisonment on Count One based, in part, on the March 31, 2013, shooting incident, as well seven armed robberies and one additional robbery carried out in furtherance of the racketeering conspiracy. Because the sentencing range on Count Two was 60 months (the mandatory minimum), the total agreed-upon sentencing range was 211 to 248 months'

imprisonment.[1]  Davis also agreed not to appeal or challenge collaterally, pursuant to Section 2255 or otherwise, any sentence within or below the stipulated sentencing range of 211 to 248 months.  However, the agreement stated that Davis was not waiving his right to assert claims of ineffective assistance of counsel on appeal or otherwise.

Pursuant to the plea agreement, the government agreed, at the time of sentencing, to move to dismiss any open counts against Davis, including the Hobbs Act robbery conspiracy and corresponding Section 924(c) count.

At the guilty plea proceeding, the Court conducted a thorough colloquy pursuant to Rule 11 of the Federal Rules of Criminal Procedure to determine whether the plea was knowing and voluntary and whether there was a factual basis for the plea.  Among other things, the Court asked Davis about his mental health conditions and any medications he was taking, and whether those things affected his ability to understand the proceedings.  (Plea Tr. 5-9).  Davis acknowledged, under oath, that he was "feeling good," he knew what he was doing, he was ready to go forward, his mind was clear, and he understood what was happening in court.  (Plea Tr. 6-9).  Davis also said he had been given enough time to discuss his case with his attorney, Bruce D. Koffsky, Esq.; that he had discussed with Mr. Koffsky the charges and any possible defenses he had, as well as the consequences of the guilty plea; and that he was satisfied with his attorney's representation.  (Plea Tr. 9-10).  The Court found that Davis was fully competent to enter an informed guilty plea.  (Plea Tr. 10).  The Court further advised Davis that by pleading guilty he was giving up all his trial rights and consenting to the entry of a judgment of guilty, and that he would be sentenced on the basis of his guilty plea.  Davis said he understood.  (Plea Tr. 10-13).

---

[1]  The parties' Guidelines stipulation in the plea agreement was not binding on the Court. (Plea Tr. 26).

In addition, Davis said he understood he faced a potential maximum sentence of twenty years' imprisonment on Count One; a mandatory minimum of five years' imprisonment and a potential life sentence on Count Two that had to run consecutively to the sentence imposed on Count One; that the decision about what sentence to impose was for the Court alone; and that if anyone, including his attorney, had attempted to predict what sentence he would receive, that prediction could be wrong. (Plea Tr. 16-24). In any event, Davis said that no one had made him a promise as to what his sentence would be. (Plea Tr. 25).

Further, Davis stated that no one had threatened or coerced or forced him to plead guilty or to enter into the plea agreement. (Plea Tr. 24-25).

As to his understanding of the plea agreement, Davis specifically confirmed that before he signed the plea agreement, he had read it and discussed every aspect of it with Mr. Koffsky, and that he understood the agreement at the time he signed it. (Plea Tr. 24-25). He also confirmed he was giving up his right to appeal or otherwise challenge any sentence of 248 months' imprisonment (the top of the stipulated Guidelines range) or less. (Plea Tr. 27).

Davis then made a factual allocution in which he stated he had been a member of the Cruddy 650 gang, and had agreed with other members of the gang to commit crimes, including robberies of Chase Bank on October 10, 2014, and Webster Bank on October 14, 2014; and that he was aware handguns were used and carried by the gang in connection with robberies carried out to further the activities of the gang. (Plea Tr. 31-32). The Court found that that constituted a sufficient factual predicate for both the racketeering conspiracy and firearms counts. (Plea Tr. 35). Also, although Davis did not specifically allocute to the other six robberies or the March 31, 2013, shooting listed in the plea agreement as having been committed in furtherance of the conspiracy, his attorney confirmed, consistent with the plea agreement, that Davis agreed he was

5

culpable for sentencing purposes for all of the robberies and the shooting. (Plea Tr. 32-33). In any event, the March 31 shooting was not the sole basis for the conviction on Count Two, the firearms count, because many of the robberies referenced in the racketeering conspiracy, including one of the two bank robberies to which Davis specifically allocuted, involved the use of a firearm. This was made clear on the record at the guilty plea proceeding. (Plea Tr. 30).

In an affidavit submitted in response to the 2255 motion and after Davis had waived his attorney-client privilege, Mr. Koffsky described the extensive plea discussions he had with both Davis and the government in the weeks prior to Davis's guilty plea. (Koffsky aff. ¶¶ 35-46). He also said he emailed the proposed plea agreement to Davis prior to the plea, advised him that the proposed agreement "specified 'all the robberies,'" and told him the decision whether or not to plead guilty was Davis's decision. (Koffsky aff. ¶ 44). A few days later, after he had prepared for the suppression hearing (Koffsky aff. ¶ 45), Mr. Koffsky met with Davis on the morning of the scheduled hearing and read him the entire proposed plea agreement, after which Davis said he intended to plead guilty rather than proceed with the suppression hearing and trial. Davis told Mr. Koffsky that if he were to proceed to trial, he "would get smoked." Together, they then prepared a statement that would constitute Davis's factual allocution. (Koffsky aff. ¶ 46).

At Davis's request, the Court subsequently relieved Mr. Koffsky as his attorney, and appointed Daniel A. Hochheiser, Esq., in Mr. Koffsky's place.

At sentencing, Davis objected to references in the PSR to his involvement in the March 31, 2013, shooting incident. (Sentencing Tr. 9-10). The Court overruled that objection (Sent. Tr. 37-39), but stated it would impose the same sentence whether the March 31 shooting was included in the Guidelines calculation or not, and whether Davis was being held responsible for

the shooting or not. (Sentencing. Tr. 31-35, 39-41).[2] The Court stated: "[E]ven if I did not consider the March 31 shooting in calculating the range or in determining what sentence to impose, I would impose the same sentence." (Sentencing Tr. 31-32).

With one exception, Davis did not object to the PSR's description of the numerous robberies listed in the plea agreement. The Court overruled that one objection. (Sentencing Tr. 38). The Court also overruled Davis's objection to the PSR's 4-level upward adjustment based on his leadership role in the racketeering conspiracy, an adjustment that had been agreed to in the plea agreement. (Sentencing Tr. 37-38). The PSR calculated the sentencing range as 168 to 210 months' imprisonment on Count One, and 60 months' imprisonment on Count Two, for a total sentencing range of 228 to 270 months' imprisonment.[3] The Court adopted that calculation. (Sentencing Tr. 41-42).

Regarding Davis's larceny conviction on September 4, 2013, which the plea agreement mistakenly described as a grand larceny, the PSR correctly described that conviction as a petit larceny. (PSR ¶ 94). In any event, because Davis ultimately served a 90-day prison sentence for that conviction, such that the PSR correctly assessed two criminal history points, the mistake in the plea agreement in describing that conviction as a felony had no impact on the Guidelines calculation.

---

[2] At sentencing, the Court made a hypothetical calculation of Davis's Guidelines range if the March 31 shooting was disregarded, which came out to 170 to 197 months' imprisonment. (Sentencing Tr. 32-33).

[3] The PSR's Guidelines range calculation was higher than the stipulated Guidelines range in the plea agreement because the PSR correctly included, in the computation of Davis's criminal history category, one additional prior sentence that was not included in the plea agreement. (Sentencing Tr. 7-9; PSR ¶ 93).

After hearing from the government and defense counsel, and from Davis as well, the Court imposed a sentence of 60 months' imprisonment on the racketeering conspiracy count and 60 months' imprisonment on the firearms count, to run consecutively, for a total sentence of 120 months' imprisonment. That sentence constituted a substantial downward variance from the applicable 228 to 270 month sentencing range.[4]

The judgment in this case was entered on July 14, 2017. Davis did not appeal his conviction or sentence. Instead, on February 18, 2018, he filed the instant 2255 motion.

## DISCUSSION

I. <u>Counsel's Performance Was Not Ineffective</u>

Under the familiar ineffectiveness of counsel standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to prevail in this case Davis must (i) demonstrate that counsel's performance fell below an "objective standard of reasonableness," meaning it amounted to incompetence under "prevailing professional norms," <u>id</u>. at 688, 690, and (ii) affirmatively prove actual prejudice, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," <u>id</u>. at 694, not merely that an error "had some conceivable effect on the outcome." <u>Id</u>. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id</u>. at 689. Indeed, this Court will not second-guess strategic or tactical decisions made by counsel. This is because there are many ways to provide

---

[4] It also constituted a substantial downward variance from the agreed-upon Guidelines range of 211 to 248 months, and from the Court's hypothetical Guidelines range of 170 to 197 range assuming the March 31 shooting was disregarded.

8

effective assistance in a given case. "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." Harrington v. Richter, 562 U.S. 86, 106 (2011) (quoting Strickland v. Washington, 466 U.S. at 689).

In the context of plea negotiations, a defendant must establish that his attorney either failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty. See Purdy v.United States, 208 F.3d 41, 45 (2d Cir. 2000). Counsel's determination as to how best to advise a client in this area "enjoys a wide range of reasonableness because '[r]epresentation is an art,' and '[t]here are countless ways to provide effective assistance in any given case.'" Id. (quoting Strickland v. Washington, 466 U.S. at 689, 693). And of course a defendant would also have to show actual prejudice; here, that but for his attorney's claimed ineffectiveness, he would have gone to trial and been acquitted, or that he would have gotten a sentence lower than the one he actually received.

Under these legal standards and the facts of this case, Davis's ineffective assistance claim is plainly without merit.

Davis does not claim his attorney failed to communicate a plea offer. At most, he claims Mr. Koffsky failed to provide objectively reasonable advice.

As to the claim that Mr. Koffsky gave Davis unreasonable advice regarding the merits of his suppression motion, and if Davis had been properly advised, he would not have waived his hearing and pleaded guilty, Davis asserts that Mr. Koffsky "knew" Davis's Fourth Amendment rights were violated when law enforcement seized his cellphone on November 3, 2014, but he nevertheless advised Davis to forego the hearing and plead guilty. First, although Mr. Koffsky did file a motion to suppress, there is no evidence he "knew" the motion would succeed. Indeed,

the government's response to the motion was that law enforcement officers seized Davis's cellphone incident to an arrest for which they had probable cause. According to the government, that probable cause was based on a tip from a confidential informant that Davis was planning to rob a bank, which led them to surveil Davis and three other persons, including the informant. While the officers were surveilling Davis, he went into a nearby building to, according to the informant, obtain a firearm. Davis then came out of the building and met again with the other persons. The officers then saw the other persons head toward a bank, stopped them, and found a note demanding $100 and $50 bills and "no dye packs." No firearm was recovered. Shortly thereafter, one of the officers located Davis, wearing a ski mask on his head despite the mild temperature, rummaging around in a corner inside a nearby bodega. Davis was taken into custody, and a cellphone was recovered from his pocket. Ultimately, the officers decided not to file charges against Davis and released him, but they kept the cellphone. Subsequently, a magistrate judge issued a warrant authorizing a search of the cellphone. Text messages appearing to relate to the October 10, 2014, Chase Bank robbery were found in the cellphone. (Government's memorandum in opposition to pretrial motions, at 22-25; Doc. #129 in Case No. 14 CR 768).

If light of the government's proffer, it certainly would not have been clear to a reasonable defense attorney that Davis would, in fact, have prevailed at the suppression hearing. Perhaps he would have prevailed, perhaps not. In any event, Mr. Koffsky's conduct in advising his client to accept the plea deal being offered—which, of course, took into consideration many other factors, such as the benefit of being sentenced after a guilty plea pursuant to a plea agreement in which the government agreed to accept a plea to a lesser-included offense under Section 924(c) and drop other counts, rather than after a conviction at trial—was not incompetence "under

10

prevailing professional norms." Strickland v. Washington, 466 U.S. at 690. Instead, viewing counsel's performance deferentially, as the Court must, counsel's conduct clearly fell "within the wide range of reasonable professional assistance." Id. at 689. Moreover, Mr. Koffsky's credible assertions that he was prepared for the suppression hearing in the event Davis chose not to plead guilty, that Davis himself said he "would get smoked" if he went to trial, and that Davis (not Mr. Koffsky) made the ultimate decision to plead guilty (Koffsky aff. ¶¶ 44-46), further demonstrate that the advice to forego the hearing and take the plea was objectively reasonable.

As to the claim that Mr. Koffsky misadvised Davis about his likely sentencing exposure, it is clear from Davis's own statements made under oath at the guilty plea proceeding that he understood he faced a potential sentence of up to twenty years' imprisonment on Count One, and up to life imprisonment on Count Two—which, of course, were substantially in excess of the 120 month (10 year) sentence he actually received. Davis also clearly understood the decision of what sentence to impose was the Court's alone, and that if anyone, including his attorney, had attempted to predict what the sentence would be, that prediction could be wrong.

And as to the allegation that his attorney misadvised him as to the particular conduct for which he would be held responsible—specifically, that he would be held responsible for the March 31, 2013, shooting—Davis confirmed at the guilty plea proceeding that he had read and understood the plea agreement and had discussed it with his attorney. That plea agreement explicitly referenced the March 31 shooting, as well as eight robberies, seven of which were armed robberies, as conduct for which he was being held responsible. And, although it was not necessary, given the explicit inclusion of these crimes in the plea agreement, in response to the Court's inquiry, Davis's attorney confirmed on the record, consistent with the plea agreement,

11

that his client understood he was being held responsible for sentencing purposes for the robberies and the shooting.

A defendant's statements at his plea allocution "carry a strong presumption of verity"—i.e., that they are true. Blackledge v. Allison, 431 U.S. 63, 74 (1977); accord, United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992) (defendant's statements at plea allocution are conclusive absent reasons "justifying departure from their apparent truth"). In light of Davis's statements at his guilty plea proceeding, Davis's claim that his attorney misadvised him about his sentencing exposure and the scope of the conduct for which he would be held responsible are plainly without merit.

Moreover, Davis has not shown actual prejudice. First, Davis has not shown he would, in fact, have prevailed at a suppression hearing. As set forth above, the government proffered that the evidence at a hearing would show the agents had probable cause to arrest Davis, and thus the seizure of the cellphone incident to the arrest was lawful. And, even if the cellphone evidence had been suppressed, Davis has not shown that the government's case against him would have been materially weakened. The government represents that at trial, it would have called four of Davis's co-conspirators as cooperating witnesses, each of whom would have testified he participated with Davis in at least one robbery, and that the cooperators' testimony would have been corroborated by telephone toll records, surveillance videos (some of which depicted Davis engaging in the charged conduct), and Davis's own confession made at the time of his 2015 arrest. Given the Court's intimate familiarity with this case—since it presided over the case for several years and sentenced approximately ten of Davis's co-conspirators following their guilty pleas to various offenses committed by and behalf of the Cruddy 650 gang—the Court is

confident the government would likely have obtained a conviction against Davis had this case gone to trial, even without the cellphone evidence.

Next, the sentence imposed—120 months' imprisonment—was substantially <u>below</u> the Guidelines range agreed to in the plea agreement (211 to 248 months), and substantially below the applicable range (228 to 270 months). It was even substantially below the hypothetical Guidelines range the Court calculated assuming the March 31 shooting was disregarded (170 to 197 months). Moreover, the Court made clear at sentencing that it would have imposed the same sentence—120 months—even if Davis was held responsible only for the robberies, and not the March 31 shooting.

In short, Davis has not come close to demonstrating that he would have prevailed at the suppression hearing, or that he would have negotiated a better plea deal that would have resulted in a sentence lower than the one he actually received, or that had he gone to trial he would have been acquitted. Therefore, he has not shown prejudice.

II.     <u>The Guilty Plea Was Knowing and Voluntary</u>

Davis's claim that his guilty plea was not knowing and voluntary because he decided to plead guilty on the morning of his scheduled suppression hearing and did not realize he was giving up his right to challenge the admissibility of evidence he claims was obtained unlawfully, and also because he was under the influence of medication, is without merit.

First, Davis is barred from making these claims in a collateral proceeding because he did not raise them on direct appeal. <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998).

But even if these claims had been preserved, the record conclusively refutes them. The Court asked Davis about his mental health conditions and the medication he was taking, and whether those things affected his ability to understand the proceedings. Davis said he was

"feeling good," he knew what he was doing, he was ready to go forward, his mind was clear, and he understood what was happening in court. He also confirmed that he had had enough time to discuss his case with his attorney, he had discussed with him the charges and any possible defenses he had, as well as the consequences of the guilty plea, and he was satisfied with his attorney's representation. Thus, there is no question Davis was fully competent to enter an informed guilty plea, as the Court so found. (Plea Tr. 10).

Again, a defendant's statements at his plea allocution "carry a strong presumption of verity"—i.e., that they are true. Blackledge v. Allison, 431 U.S. at 74. "Absent credible reasons for rejecting [Davis's] statements, they establish that the plea was entered knowingly and voluntarily." United States v. Arias, 166 F.3d 1201 (2d Cir. 1998) (summary order). Here, based on the statements he made at his guilty plea proceeding, Davis well understood the nature and consequences of his decision to plead guilty. Nothing in the voluminous papers he has submitted in support of his petition suggests his statements at the time of the plea were not true.

Moreover, Davis's claim that by pleading guilty, he unknowingly waived his right to challenge the admissibility of the cellphone evidence he claims was obtained unlawfully, is frivolous. He absolutely knew he was giving up that right. He pleaded guilty on the day his suppression hearing was scheduled—in other words, he decided to plead guilty <u>instead</u> of proceeding with the hearing and trial. Mr. Koffsky's credible assertions in this regard confirm that that was exactly Davis decided to do. The Court finds and concludes that, by pleading guilty, it was abundantly clear to Davis that he was giving up his right to challenge the seizure of his cellphone and thus the admissibility of that evidence at trial. The Court specifically advised Davis that if he pleaded guilty, he was waiving all his trial rights—including the right to require the government to prove at a trial that he was guilty <u>based on competent evidence</u> beyond a

14

reasonable doubt. (Plea Tr. 11). The Court told Davis that if he went forward with the guilty plea, "there will be no trial, and I will enter a judgment of guilty and sentence you on the basis of your guilty plea." When asked if he understood, Davis replied, "Yes, sir." (Plea Tr. 13).

In any event, there is no basis for the Court to find the government's case against Davis would have been materially weakened had the cellphone evidence been suppressed. As explained above, the government represents that it would have called four of Davis's co-conspirators as cooperating witnesses at trial, each of whom would have testified he participated with Davis in at least one robbery, and that the cooperators' testimony would have been corroborated by telephone toll records, surveillance videos, and Davis's own confession made at the time of his arrest. The Court is confident the government would likely have obtained a conviction against Davis had this case proceeded to trial, even without the cellphone evidence.

III.  Davis Was Properly Sentenced

First, to the extent Davis contends that his conviction on Count Two under 18 U.S.C. § 924(c) was based solely on the March 31, 2013, shooting, Davis is not correct. The 924(c) conviction was predicated on the racketeering conspiracy charged in Count One, and the core of that conspiracy was the numerous robberies that Davis planned and orchestrated in which guns were used and carried. The prosecutor confirmed these facts on the record at the guilty plea proceeding. (Plea Tr. 30). In fact, Davis specifically allocuted to his participation in an armed robbery of a branch of Webster Bank in Yonkers on October 14, 2014, during which a gun was brandished. (PSR ¶¶ 41-44). Thus, Davis was convicted on Count Two based on the use of firearms during the course of the conspiracy's activities, not just the March 31 shooting.

15

In any event, as explained below, in light of the Supreme Court's decision in <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), the conviction on Count Two must be vacated, and Davis will be resentenced on Count One alone.

Second, to the extent Davis contends he was improperly sentenced based on the March 31, 2013, shooting, that contention is rejected for the following reasons: (i) his responsibility for the March 31 shooting is clearly spelled out in his plea agreement, which, as explained above, he read and understood before he signed it; and (ii) the Court explicitly stated at sentencing that the sentence would be the same whether or not Davis was being held responsible for the March 31 shooting.

Third, to the extent Davis contends he was improperly sentenced based on the plea agreement's mistaken description of his September 4, 2013, conviction as grand larceny, that contention is incorrect. As explained above, the PSR correctly described that conviction as a petit larceny and, in any event, Davis ultimately served a 90-day prison sentence for that conviction, such that the PSR correctly assessed two criminal history points. (PSR ¶ 94). <u>See</u> U.S. Sentencing Guidelines §§ 4A1.1(b), 4A1.2(d)(2)(A). Therefore, the mistake in the plea agreement in describing that conviction as a felony had no impact on the Guidelines calculation, and it also had no impact on the Court's ultimate sentencing decision.

IV. <u>The Conviction on Count Two Must Be Vacated and Davis Must Be Resentenced on Count One</u>

Under the reasoning of <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), as the government acknowledges, Davis's firearms conviction under Section 924(c) must be vacated. This is because a conspiracy to commit racketeering qualifies as a "crime of violence" only under the so-called residual clause of that statute, 18 U.S.C. § 924(c)(3)(B), which the Supreme Court has now declared unconstitutionally vague. <u>United States v. Davis</u>, 139 S. Ct. at 2336. Since

16

Davis's 924(c) conviction on Count Two was based on the racketeering conspiracy charged in Count One, and since racketeering conspiracy is no longer a crime of violence under the statute, the firearms conviction is invalid.

Davis has argued that if his 924(c) conviction is vacated, his total sentence would be 60 months' imprisonment, which is the sentence the Court imposed on the racketeering conspiracy count. Davis is incorrect. It is the Court's obligation to impose a total sentence that comports with the requirements of 18 U.S.C. § 3553(a), which includes taking into account, when imposing a sentence on any count that does not carry a mandatory sentence, the effect of a mandatory minimum consecutive sentence. See Dean v. United States, 137 S. Ct. 1170, 1175-78 (2017). The Court did exactly that in this case—it decided that after considering the whole of Davis's conduct, as well as his personal history and characteristics, a total sentence of 120 months' imprisonment was sufficient but not greater than necessary to satisfy the sentencing objectives of Section 3553(a). (Sentencing Tr. 57-67). The Court then structured the sentence to comply with the requirements of Section 924(c); namely, the Court imposed a sentence of 60 months' imprisonment on Count One, and a mandatory minimum sentence of 60 months' imprisonment on Count Two, to run consecutively to the sentence on Count One, for a total of 120 months' imprisonment. (Sentencing Tr. 67).

Since the 924(c) conviction, which carries a mandatory minimum consecutive sentence, will be vacated, and since the conviction on the racketeering conspiracy count is not being vacated, Davis will have to be resentenced on the racketeering conspiracy count after taking into consideration all of his conduct as well as his personal history. See United States v. Davis, 139 S. Ct. at 2336 ("[D]efendants whose § 924(c) convictions are overturned by virtue of today's ruling will not even necessarily receive lighter sentences: As this Court has noted, when a

defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts' if such an increase is warranted.) (quoting Dean v. United States, 137 S. Ct. at 1176)).

The Court will direct the Probation Department to prepare a revised Presentence Report, principally to recalculate the Guidelines range without reference to the Section 924(c) firearms conviction on Count Two, although the Probation Department will be free to consider any additional factors it deems relevant and to make any sentencing recommendation it deems appropriate.

The Court will also re-appoint Mr. Hochheiser as Davis's counsel for purposes of resentencing.

V.     Davis Is Not Entitled to an Evidentiary Hearing

Finally, as to all of Davis's various claims, there is no reason to hold an evidentiary hearing in this case. In light of this Court's intimate familiarity with the underlying criminal proceedings, Mr. Koffsky's detailed and credible affirmation, and the fact that petitioner's "highly self-serving and improbable assertions" are contradicted by the trial record and common sense, no purpose would be served by adding to the combined written submissions on the 2255 motion or by otherwise expanding the record. Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001); see Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011).

**CONCLUSION**

Mykai Davis's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence is GRANTED IN PART and DENIED IN PART.

To the extent the motion is based on a claim of ineffective assistance of counsel or alleged defects in Davis's guilty plea and sentencing proceedings, the motion is DENIED. Therefore, his conviction for conspiring to participate in the affairs of a racketeering enterprise (Count One) must stand. However, as the government acknowledges, Davis's firearms conviction under Section 924(c) (Count Two) must be vacated in light of United States v. Davis139 S. Ct. 2319 (2019). That being the case, although there is no basis to vacate Davis's racketeering conspiracy conviction, his sentence must be vacated and he will be resentenced on the racketeering conspiracy count.

The Court schedules a hearing on October 4, 2019, at 11:30 a.m., at which the government will consent to a vacatur of Davis's conviction on Count Two, and Davis will be resentenced on Count One.

The Court directs the Probation Department to prepare a revised and updated Presentence Report.

The Court re-appoints Daniel A. Hochheiser, Esq., pursuant to the Criminal Justice Act, as Davis's counsel for purpose of resentencing.

The Court will not enter a judgment in Case No. 18 CV 1308 (VB) at this time. After Davis is resentenced, the Court will enter an amended judgment in the criminal case and a final judgment in the civil case.

As petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Chambers will mail a copy of this Opinion and Order to petitioner at the address on the docket in Case No. 18 CV 1308 (VB).

Dated: July 30, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge